Ray AMSDEN, d/b/a Ray's Diesel Service;
a/k/a E. R. Amsden, d/b/a Ray's
Diesel Service, Appellant,

v.

GRINNELL MUTUAL REINSURANCE CO.
et al., Appellees.

No. 55074.

Supreme Court of Iowa.

Dec. 20, 1972.

Willis & Willis, Lake City, for appellant.

Ruan, Franck and Mundt, Denison, for Grinnell Mut. Reinsurance Co. and Hawkeye-Security Ins. Co., appellees.

Jones, Hoffman & Davison, Des Moines, for National Fire Ins. Co. of Hartford, appellee.

Heard before MOORE, C. J., and Le-GRAND, UHLENHOPP, HARRIS and McCORMICK, JJ.

HARRIS, Justice.

Plaintiff insured has appealed a verdict directed in favor of his fire insurance companies. We affirm.

The three defendant insurance companies issued fire insurance policies upon the assets and business earnings of plaintiff's farm implement business. These policies were in force October 15, 1969 when fire destroyed plaintiff's business building and contents. The state fire marshall concluded the fire was the work of an arsonist and undertook an investigation. Plaintiff himself was among those investigated. Plaintiff promptly filed his loss claims but, because of the nature of the property insured and extent of loss, was unable to state the amount of his loss with any degree of accuracy. He promptly brought action on the policy. The filing is urged as fixing the obligations under the policy. However, plaintiff amended the inventory of his loss as late as April 1970.

The fire marshall's investigation cleared plaintiff of any responsibility for the fire in February 1970. The loss was settled and paid July 31, 1970. This was within 60 days after plaintiff and defendants had arrived at an amount agreed as the loss.

This separate action was brought on a theory of outrageous conduct. The plaintiff asserted defendants were guilty of bad faith in failing and refusing to pay the fire loss claim when their duty to do so was clear. This failure was claimed to be coupled with intentional harassment amounting to bad faith. The twice amended petition is perhaps no model of clarity. The action sounds both in contract and tort and it is understandable the pleadings would wander from one field to the other. The petition does sufficiently, if not succinctly, state a cause of action for the intentional infliction of severe emotional distress. We must affirm because plaintiff has wholly failed to prove it.

I. Recovery for the tort of intentional infliction of mental distress is a right of comparatively recent origin. Prosser, Law of Torts, § 11, page 41 (3rd ed. 1964).

"So far as it is possible to generalize from the cases, the rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. * * *." Id. at 48.

Prosser then describes various acts which have been held to qualify under this generalization.

"* * * Similar outrageous bullying tactics on the part of insurance adjusters seeking to force a settlement, * * * have been subjected to the same liability." Id. at 50.

On the same theory later cases from other states have continued to allow recovery against insurance companies for injuries resulting from outrageous bullying tactics in settling claims. Eckenrode v. Life of America Ins. Co., 470 F.2d 1 (7th Cir. 1972); Fletcher v. Western National Life Ins. Co., 10 Cal.App.3d 376, 89 Cal.Rptr. 78. These authorities explain the basis and limits of liability in such situations and serve as examples of the sort of conduct considered to be outrageous.

In Fletcher the insured under a disability policy was a manual laborer who earned $289 per week by working 70 to 80 hours. He was the father of eight children, ranging in ages from 8 to 19 years, seven of whom were in school. He had a fourth grade education. He became disabled and clearly entitled under the policy to monthly payments of $150 for a period of 30 years. Another provision in the policy would have paid $150 monthly for only two years in case of sickness. Fully aware of the company's clear liability under the 30 year disability provision, the adjuster undertook to exploit the insured's desperate economic condition. The adjuster's aim was to frighten the insured into accepting less than was due him. This was to be accomplished by fabricating a dispute. Although under the policy no dispute existed the purpose was to bully the insured into settling it by agreeing to pay under the two year sickness provision rather than under the 30 year disability provision. The court said:

"We hold, therefore, that the defendants' threatened and actual bad faith refusals to make payments under the policy, maliciously employed by defendants in concert with false and threatening communications directed to plaintiff for the purpose of causing him to surrender his policy or disadvantageously settle a nonexistent dispute is essentially tortious in nature and is conduct that may legally be the basis for an action for damages for intentional infliction of emotional distress. We further hold that, independent of the tort of intentional infliction of emotional distress, such conduct on the part of a disability insurer constitutes a tortious interference with a protected property interest of its insured for which damages may be recovered to compensate for all detriment proximately resulting therefrom, including economic loss as well as emotional distress resulting from the conduct or from the economic losses caused by the conduct, and, in a proper case, punitive damages." 10 Cal. App.3d at 401, 89 Cal.Rptr. at 93.

The California court relied on Professor Prosser and on earlier California cases. It noted a similarity between the question presented and the recognized obligations of a liability insurance carrier in settling claims brought against their insured by a third person. California had previously held the liability company had a duty in such situations to act reasonably and in good faith. Crisci v. Security Ins. Co., 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P. 2d 173. The Crisci holding was similar to our holding in Henke v. Iowa Home Mutual Cas. Co., 250 Iowa 1123, 97 N.W.2d 168. We agree with the following observations of the California court in the Fletcher opinion:

"* * *

"The violation of that duty sounds in tort notwithstanding that it may also constitute a breach of contract. (Authorities) We think that, similarly, the implied-in-law duty of good faith and fair dealing imposes upon a(n) * * * insurer a duty not to threaten to withhold or actually withhold payments, maliciously and without probable cause, for the purpose of injuring its insured by depriving him of the benefits of the policy. We think that, as in Crisci,

the violation of that duty sounds in tort notwithstanding that it also constitutes a breach of contract. (Authorities) (Emphasis in the original)

" * * *

" * * * There is no sound reason why plaintiff's legally recognized interests should receive less protection from interference by the insurer itself, which has a special duty to plaintiff of good faith and fair dealing, nor is there any reason why plaintiff's insurer should be held to a lower standard of conduct than a stranger.

" * * *

" * * * The very risks insured against presuppose that if and when a claim is made, the insured will be disabled and in strait financial circumstances and, therefore, particularly vulnerable to oppressive tactics on the part of an economically powerful entity." 10 Cal.App.3d at 401–404, 89 Cal.Rptr. at 93–95.

Eckenrode v. Life of America Ins. Co., supra, involved a life insurance policy in which the insured was the victim of an accidental homicide. The widow beneficiary was left with several children and had no money or property, not even for funeral expenses. The insurer knew or should have known of the death of the insured, its liability and of plaintiff's financial distress; but the insurer deliberately refused demands for payment. Instead it " * * * applied 'economic coercion' in refusing to make payment on the policy, and in 'inviting' plaintiff to 'compromise' her claim by implying it (Insurer) had a valid defense to the claim." Attached to the plaintiff's complaint was a letter of the insurer suggesting that in view of the police investigation not likely to be completed until the "very distant future" plaintiff might like to suggest an offer to "settle" rather than wait for the police report.

■ Applying Illinois law as announced in Knierim v. Izzo, 22 Ill.2d 73, 174 N.E. 2d 157 and citing California authorities including Fletcher as well as Prosser and Restatement 2d, Torts, § 46(1), the circuit court reversed a dismissal of the suit. It quoted with approval, as do we, the following language from Fletcher as correctly setting out the elements of a prima facie case for the tort of intential infliction of severe emotional distress:

"(1) Outrageous conduct by the defendant;

"(2) The defendant's intention of causing, or reckless disregard of the probability of causing emotional distress;

"(3) The plaintiff's suffering severe or extreme emotional distress; and

"(4) Actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Supra, 470 F.2d at 4.

Of course an insurer may assert its rights in settlement negotiations as in other matters.

"It is true that settlement tactics may be privileged under circumstances where an insurer has done no more than insist upon his legal rights in a permissible way. But we do not think that a refusal to make payments based on a bad faith insistence on a non-existent defense is privilege conduct against the complaint here." Id. at 5.

■ The facts presented in the appeal before us do not even begin to approach outrageous conduct. There is not the slightest hint any of the defendants were guilty of "conduct exceeding all bounds usually tolerated by decent society." It is plainly not improper for a fire insurance company to wait for a reasonable period for an arson investigation when the insured is suspected by the authorities. It is even more obvious a fire insurance company cannot be expected to pay a loss during a period of time when the amount thereof is unknown not only to itself but to the insured.

■ II. Plaintiff offers a disquieting suggestion as to why he so obviously and

completely failed to show any outrageous conduct on the part of defendants. This suggestion appears as a separate assignment of error. The trial court erred in ruling interoffice memos and intercompany memos of the defendant insurance companies were inadmissible into evidence. Defendants requested this advance ruling prior to and again at the time of trial to prevent plaintiff from using any contents of the company files which had been subpoenaed. These records were clearly discoverable and admissible under the rules outlined in Henke v. Iowa Home Mutual Cas, Co., 249 Iowa 614, 87 N.W.2d 920 and in Henke v. Iowa Home Mutual Cas. Co., 250 Iowa 1123, 97 N.W.2d 168. A ruling they were inadmissible was accordingly erroneous.

 Defendants justify the ruling on the claim the error was not preserved. No proffer was made. In the absence of a proffer we have consistently held we will not review the ruling excluding evidence. Stevenson v. Abbott, 251 Iowa 110, 99 N.W.2d 429. See also Margolin, Offer of Proof, Workshop Outlines at Ninety-Second Annual Meeting, Iowa State Bar Association, D1 (1965), 88 C.J.S. Trial § 73, page 179. However, a proffer could not be required of counsel improperly deprived of matters peculiarly within the possession of an opposing party. Proof of a claim of the type presented here must ordinarily be made largely on the basis of evidence obtained by discovery. Under normal circumstances it would be impossible to expect counsel to formulate an offer of proof until that discovery is had. An exception to the rule requiring a proffer might well be appropriate where counsel is improperly denied legitimate access to opponent's records on discovery. However we cannot apply such an exception in this case. Upon oral submission of this appeal it was conceded the company records sought were supplied plaintiff's counsel at the time of trial. We can well believe counsel's assertion they were hard pressed to search the records in the limited time available during trial recesses. Counsel might well have objected at the time, asked for an extended recess or even sought a continuance. But no objection was made and, to whatever extent they could, counsel proceeded to search the materials and to make whatever use of them they could at trial. Having done so they cannot complain the materials were not discovered. Under the circumstances counsel cannot be excused from the requirement of making an offer of proof.

III. A separate motion in limine was sustained prior to trial. It excluded from the trial any mention of a claim for wrongful cancellation of insurance. We need not reach the question of the appropriateness of such a claim. Under State v. Johnson, 183 N.W.2d 194, 197 (Iowa 1971) a motion in limine " * * * should not, except upon a clear showing, be used to reject evidence." Therefore plaintiff cannot complain.

IV. We have carefully examined appellant's various other contentions and find them without merit. A further discussion of those contentions would unduly extend this opinion without changing the result.

Affirmed.