Harold L. RODGERS, Plaintiff,

v.

PENNSYLVANIA LIFE INSURANCE
COMPANY, Defendant.

Civ. No. 81–338–A.

United States District Court,
S. D. Iowa, C. D.

April 16, 1982.

Fred J. Haas and Mark Humphrey, Humphrey, Haas & Gritzner, Des Moines, Iowa, for plaintiff.

Barry A. Russell, Blanchard, Cless, Hanson & Pundt, Des Moines, Iowa, for defendant.

## RULING AND ORDER

STUART, Chief Judge.

Harold L. Rodgers filed a complaint against the Pennsylvania Life Insurance Company on July 22, 1981. The dispute arose over benefits payable under a disability insurance policy defendant issued to him about ten years ago. Plaintiff's claims are based on breach of contract, the tort of bad faith, intentional interference with protected property interests, and the intentional infliction of emotional distress. Compensatory and punitive damages are sought. Jurisdiction is invoked under 28 U.S.C. § 1332.

Defendant filed motions to dismiss the original and amended complaint and moved to strike an affidavit which was filed by plaintiff for the purpose of establishing amount in controversy. Hearing was held December 17, 1981. Appearances are noted in the clerk's minutes.

■ In ruling upon a motion to dismiss for failure to state a claim, the Court must accept as true all well-pled allegations of the complaint and construe them in a light most favorable to the complainant. *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Fact pleading is not required and "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim". *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); See *Hungate v. United States,* 626 F.2d 60, 62 (8th Cir. 1980). However, the complainant must show, at minimum, the prima facie elements of his claim in order to avoid dismissal. 626 F.2d at 62.

The following facts are alleged in the complaint.

On July 26, 1971 defendant contacted plaintiff through its agent, Max Cross, concerning the purchase of a disability income insurance policy. Plaintiff told the agent that he wanted a policy which would guarantee life time benefits should he become disabled. Max Cross then executed and delivered to the plaintiff a policy which would pay benefits of $200 per month should plaintiff be totally disabled. These payments were to be made for as long as the total disability continued. Plaintiff complied with all of the conditions of the policy which is now and has been since 1971 in full force and effect.

Plaintiff, who is a farmer, became totally disabled in January of 1976. Defendant made payments under the disability policy from January 8, 1976 through October 12, 1976 but thereafter discontinued monthly benefits. Plaintiff claims that defendant misrepresented policy coverage, delayed benefit payments unreasonably and failed to properly investigate the extent of his disability. Other abuses relating to claim processing are also alleged.

Defendant set up an independent medical examination which was performed by Dr. Ralph R. Pray on January 21, 1977. He found plaintiff suffered from various medical problems including obesity and organic heart disease. In the doctor's opinion, plaintiff was disabled to the extent he could not work in gainful employment. Defendant reviewed the doctor's report and on February 4, 1977, informed plaintiff that no further benefits would be paid.

Three and a half years later, in July of 1980, plaintiff suffered a heart attack. He underwent heart surgery that same month and applied for total disability benefits on August 18, 1980. Although the dates do not appear, he was confined indoors both prior to and after the surgery and required and continues to require the regular attendance of a physician.

Plaintiff received monthly disability benefits following his heart attack through June 5, 1981. However, these payments were usually delayed despite plaintiff's repeated requests that defendant remain current with the payments.

Defendant knew plaintiff was a farmer whose income was dependent upon his ability to do farm work. Defendant also knew that plaintiff had a wife to support and was dependent upon the financial benefits of the disability policy once plaintiff was no longer able to farm.

A. *Subject matter Jurisdiction.*

■ Jurisdiction of this Court is based upon diversity of citizenship, 28 U.S.C. § 1332(a)(1). Plaintiff does not specify the amount of damages claimed except in Count VII for intentional infliction of severe emotional stress, ($100,000). Defendant has computed the number of months for which disability payments are claimed, contending that the total of such payments is considerably less than the $10,000 jurisdictional amount. Defendant claims this Court does not have jurisdiction. Plaintiff attached his affidavit to his resistance claiming damages in excess of the jurisdictional amount on all counts. The Court cannot say that it appears beyond doubt

that plaintiff can prove no set of facts which would show damages of $10,000 or more. However, the complaint should allege damages to satisfy the jurisdictional requirements. Plaintiff will be given 10 days from the date of this Ruling and Order to amend the complaint to make such allegation.

*Good Faith and Fair Dealing.*

■ In Count II plaintiff alleges that defendant acted wrongfully and unreasonably in breach of the implied covenant of good faith and fair dealing in terminating benefits to plaintiff on October 12, 1976. In Count IV plaintiff alleges the same cause of action relating to the July 1980, application for disability benefits. Both counts involve the question of whether Iowa recognizes a cause of action against an insurer for breach of a duty to act in good faith toward and to deal fairly with its insured. This issue has never been directly addressed by the Iowa Courts.

Defendant acknowledges that the Iowa Courts have utilized the "bad faith" concept and approach in excess settlement situations, *Kooyman v. Farm Bureau Mutual Ins. Co.*, 267 N.W.2d 403, 406 (Iowa 1978) and citations, but argues that the fiduciary relationship that exists when the insurer has control of the settlement process and is in a position to expose the insured to an excess judgment through an unreasonable failure to settle is not present when the dispute is between the insurer and its insured over the amount payable to insured under the terms of the insurance policy. *Spencer v. Aetna Life & Casualty Insurance Company*, 227 Kan. 914, 611 P.2d 149, 155.

Plaintiff, in support of his position, cites *Amsden v. Grinnell Mutual Reinsurance Company*, 203 N.W.2d 252 (Iowa 1972) and this Court's opinion in *Sigler v. Mutual Benefit Life Insurance Company*, 506 F.Supp. 542, 545 (S.D.Iowa 1981). The comment in *Sigler* was dictum and should not be read as holding that an action for breach of a duty of good faith and fair dealing has been recognized in Iowa. The insurer's position in that case was fully supported by the

applicable law. It was not necessary for the court to decide whether such cause of action did in fact exist.

The nearest an Iowa Court has come to considering bad faith claims in the context of first party insurance actions is *Amsden v. Grinnell Mutual Reinsurance Co.,* 203 N.W.2d 252 (Iowa 1972). However, that case merely established an action for the intentional infliction of emotional distress when defendant's conduct was outrageous. *Id.* at 252. See also *Meyer v. Nottger,* 241 N.W.2d 911, 918 (Iowa 1976). Plaintiff fails to allege any outrageous conduct in counts 2 and 4. The issue of whether a first party bad faith claim is actionable in Iowa is therefore clearly presented here for the first time.

Early California cases laid the foundation for the development of the tort of bad faith in first party insurance actions. See *Comunale v. Traders General Ins. Co.,* 50 Cal.2d 654, 328 P.2d 198 (1958); *Crisci v. Security Ins. Co.,* 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173 (1967); *Fletcher v. Western Nat'l Life Ins. Co.,* 10 Cal.App.3d 376, 89 Cal. Rptr. 78 (1972). This line of cases culminated in the decision of *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1972), in which bad faith was held to support an independent action against an insurer for failure to settle with its insured. It should be noted that the Crisci holding is similar to the holding in *Henke v. Iowa Home Mut. Cas. Co.,* 250 Iowa 1123, 97 N.W.2d 168 (1959), both of which concern the obligations of an insurance carrier in settling claims brought against its insured by a third person. Later, the court in *Amsden* cited with approval several passages from *Fletcher* and ultimately adopted the holding of the California court in that case. 203 N.W.2d at 254, 255.

In *Spencer v. Aetna Life and Cas. Ins. Co.,* 227 Kan. 914, 611 P.2d 149, 151–152 (1980), the Supreme Court of Kansas carefully reviewed the decisions adopting the *Gruenberg* approach or embracing similar positions and generally identified the reasons for those decisions. The Court also reviewed the cases which refused to recognize a tort of bad faith in first party cases. *Id.* 151–153. This Court, in predicting which line of cases the Iowa Supreme Court will follow, believes that the Iowa Supreme Court will continue to follow the lead of the California court, as the reasons for recognizing such causes of action are more in keeping with the approach of the Iowa Supreme Court. "Essentially, all arguments for the adoption of bad faith tort pertain to the unequal bargaining position of insured and the insurer and the public interest nature of the industry." *Spencer,* 611 P.2d at 152.

The superior bargaining power of an insurance company over its insured has long been recognized in Iowa. Insurance policies are simply contracts of adhesion under which the insured's " 'chances of successfully negotiating with the company for any substantial change in the proposed contract are just about zero.' " *C & J Fertilizer, Inc. v. Allied Mut. Ins. Co.,* 227 N.W.2d 169, 174 (Iowa 1975). Furthermore, " 'The very risks insured against presuppose that if and when a claim is made, the insured will be disabled and in straight financial circumstances and, therefore, particularly vulnerable to oppressive tactics on the part of an economically powerful entity.' " *Amsden,* 203 N.W.2d at 255, citing *Fletcher,* 10 Cal. App.3d at 401–404, 89 Cal.Rptr. at 93–95. The allegations in plaintiff's complaint, which are taken as true for the purposes of ruling on defendant's motion, fully support the fact that plaintiff found himself in this type of unfavorable position.

Defendant argues that requirement for state approval of all insurance contracts "presumably overcomes the adhesion problem." If this were a dispute over the terms of the contract, the argument would have more force. However, we are here concerned with allegations relating to payments under the contract and the vulnerability of the insured to possible oppressive tactics of the insurer in refusing to make payments which may legitimately be due under the contract.

It is true that in the latter instance the insurer and insured are in adversarial positions and that the same fiduciary relationship does not exist that exists in cases involving settlements with third-party claimants. Insurer does not have control over the negotiations on the part of the insured nor can insurer's conduct subject the insured to personal liability for excess verdicts when the dispute is over payment under the policy to the insured. However, there can be a duty of good faith and fair dealing without imposing the standard of conduct required of a fiduciary. *Gruenberg* defines the "implied-in-law duty of good faith and fair dealing" as "a duty not to threaten to withhold or actually withhold payments, maliciously and without probable cause, for the purpose of injuring its insured by depriving him of the benefits of the policy." It is this Court's judgment that this is the standard of duty the Iowa Supreme Court will impose.

Although the Kansas Supreme Court held that the tort of bad faith is not recognized in Kansas, it did so because the Kansas legislature had provided a remedy for an insured who has problems with his insurance company. The court found it undesirable to expand by judicial decree the detailed and effective remedies to include damages for emotional suffering through a tort of bad faith. Iowa Code Chapter 507B does not specifically provide a cause of action for an insured and the Iowa Supreme Court has not yet determined whether one is implied from the Act.

The Court is of the opinion that Iowa recognizes the existence of an implied in-law duty of good faith and fair dealing running from the insurer to the insured which duty imposes upon a disability insurer a duty not to threaten to withhold or actually withhold payments, maliciously and without probable cause, for the purpose of injuring its insured by depriving him of the benefits of the policy.

### Punitive Damages

■ Defendant claims that punitive damages are not available in bad faith actions and moves to dismiss counts 3, 5, and parts of counts 6 and 7. In the context of third party actions, the allowance of punitive damages rests with the fact finder. *Hayes Bros., Inc. v. Economy Fire & Cas. Co.*, 634 F.2d 1119, 1124 (8th Cir. 1980). Consequently, when considering a motion to dismiss, the Court will merely determine whether the complaint alleges the necessary elements of a prima facie case for the recovery of punitive damages. *See Hungate*, 626 F.2d at 62. Plaintiff must therefore allege that the defendant acted maliciously in willful or reckless disregard of plaintiff's rights. *Syester v. Banta*, 257 Iowa 613, 628–629, 133 N.W.2d 666, 676 (1965).

■ Plaintiff has sufficiently alleged grounds on which it could be found that defendant acted in bad faith, with no reasonable grounds to deny or delay benefits. Plaintiff has also alleged the defendant acted maliciously and recklessly in denying those benefits to support an award of punitive damages. The pleadings are sufficient.

### Statute of Limitations.

Defendant additionally argues that Counts 2, 3, 6 and 7 are barred by the statutes of limitation. The issue to be determined with respect to counts 2 and 3 is whether the two year statute of limitations found at Iowa Code Section 614.1(2) or the five year statute of limitation found at Iowa Code Section 614.1(4) applies to bad faith actions. The statutes of limitation under Iowa Code Section 614.1 provide in pertinent part:

Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specifically declared:

... 2. Those founded on injuries to the person or reputation, including injuries to relative rights, whether based on contract or tort, or for a statute penalty, within two years.

... 4. Those ... brought for injuries to property, ... and all other actions not otherwise provided for in this respect, within five years ....

■ A determination as to which of these two limitation provisions applies is made by characterizing the actual nature of the action. *Clark v. Figge*, 181 N.W.2d 211, 213 (Iowa 1970). In *Clark v. Figge*, the court was confronted with choosing between the two or five year limitation period for the action of interference with business relationships. Iowa Code Section 614.1(2) was generally found to cover "defamation, torts causing bodily injury or death, and harm related to those wrongs." *Id.* at 215.

In concluding that interference with business relationships was essentially an injury to property and, as such, fell within section 614.1(4) and not within section 614.1(2), the court noted that it was not faced with allegations of emotional distress. *Id.* The court supported its conclusion that the five year limitation period applied with citation of cases involving various types of economic business losses. None of the cases referred to dealt with injuries to persons or their relative rights, thereby distinguishing causes of action based upon interference with business relationships from causes of action which involve personal injuries. By implication, the court determined that allegations of emotional distress would fall within the classification of section 614.1(2).

The Iowa Supreme Court in *Amsden v. Grinnell Mutual Reinsurance Co.*, 203 N.W.2d 252, 254 (Iowa 1972), agreed with the California court's observations in *Fletcher v. Western National Life Insurance Co.*, 10 Cal.App.3d 376, 89 Cal.Rptr. 78 (1970) that an insurer who breaches his duty of good faith and fair dealing, deprives the insured of the benefits of his insurance policy. Consequently, it can be inferred that an insured may sustain some property damage as a result of tortious bad faith conduct of an insurer.

■ However, it is unlikely that the Iowa Supreme Court would characterize the actual nature of plaintiff's good faith and fair dealing allegations wholly as property injuries rather than personal injuries. This court is of the opinion that the Iowa court, for purposes of applying the statutes of limitation, would conclude that plaintiff's

"good faith and fair dealing" cause of action should be separated into two categories of allegations, those relating to personal injuries and those concerning injury to economic or financial interests. Utilizing this analysis, the allegations regarding recovery for emotional distress would be considered injuries to the person and, therefore, would fall within the two-year limitation period of section 614.1(2), whereas, the economic loss allegations would be deemed injuries to a property right and, consequently, would be encompassed within the five year limitation period of section of 614.1(4).

■ In Count II of his complaint, plaintiff seeks to recover damages for both emotional distress and economic loss as a result of defendant's alleged breach of its duty of good faith and fair dealing. Defendant engaged in the alleged activities complained of in Count II of plaintiff's complaint prior to and on October 12, 1976. The filing date of plaintiff's complaint was July 22, 1981, more than four years after defendant's alleged commission of tortious activities. As a result, the portion of Count II in which plaintiff seeks to recover damages for emotional distress, an injury characterized as personal in nature, must be dismissed since it is time barred under section 614.1(2).

That portion of Count II in which plaintiff seeks recovery of economic damages shall be retained since it was brought within the five year limitation period of 614.1(4) relating to property rights.

■ Defendant contends that Count III of plaintiffs complaint is also time barred. In Iowa, recovery of punitive damages is only incidental to the main cause of action and cannot be awarded as a matter of right. *Sebastian v. Wood*, 246 Iowa 94, 66 N.W.2d 841, 844 (1954). An award of punitive damages depends upon whether the facts in a particular case indicate that such an award is appropriate in order to punish an offending party or discourage others from similar wrongful conduct. *Meyer v. Nottger*, 241 N.W.2d 911, 922 (Iowa 1976). As the court has held that a cause of action does exist for the economic

loss allegedly sustained, the punitive damage claim alleged in Count III can be maintained.

Plaintiff alleges in Count VI of his amended complaint that defendant tortiously interfered with his protected property interest, whereas defendant argues that such a cause of action is not recognized in Iowa. Plaintiff relies upon *Amsden v. Grinnell Mutual Reinsurance Co.*, 203 N.W.2d at 252, as support for his proposition that Iowa recognizes a separate cause of action for interference with a protected property interest. However, the *Amsden* court, while referring to language used by the California court in *Fletcher v. Western National Life Reinsurance Co.*, 10 Cal. App.3d 376, 89 Cal.Rptr. 78 (1970), simply held that the tort of intentional infliction of severe emotional distress was a recognized cause of action in Iowa. No independent tort of interference with a protected property interest was fashioned.

Although the California court in *Fletcher* referred to conduct by an insurer which constituted a tortious interference with a protected property interest of the insured, an interpretation consistent with later California decisions is that, rather than constituting an independent cause of action, the insurer's tortious interference with an insured's protected property interest merely forms the basis for breach of an insured's implied duty of good faith and fair dealing. *See, e.g., Gruenberg v. Aetna Insurance Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973); *Austero v. National Casualty Co. of Detroit Michigan*, 84 Cal.App.3d 1, 148 Cal.Rptr. 653 (1978). In other words, by engaging in bad faith conduct, an insurer tortiously interferes with an insured's protected property interest in the benefits of the insurance contract, resulting in one cause of action for breach of the insurer's implied duty of good faith and fair dealing.

It is unlikely that the Iowa Supreme Court would recognize the existence of an independent tort of interference with a protected property interest, since it is that very interference by the insurer which gives rise to the insured's "bad faith" claim against the insurer.

Therefore, Count VI of plaintiff's complaint must be dismissed for failure to state a cause of action.

Plaintiff alleges in Count VII of his amended complaint, that defendant maliciously and without probable cause inflicted upon him severe emotional distress. As a result of defendant's alleged activities in both 1976 and 1980–81, plaintiff seeks damages for severe mental and emotional distress as well as an award of punitive damages. Defendant contends that plaintiff's cause of action is time barred.

The tort of intentional infliction of emotional distress is recognized in Iowa. *Amsden v. Grennell Mutual Reinsurance Co.*, 203 N.W.2d at 252. This tort is characterized as a personal injury and, as such, is subject to the two-year limitation period imposed by Iowa Code Section 614.1(2). Plaintiff's allegations set forth in Count VII encompass both the activities engaged in by defendant in 1976 and those of 1980–81. The two year statutory limitation period for defendant's 1976 activities has long passed. Consequently, plaintiff's allegations relating to the 1976 time period must be stricken from Count VII of plaintiff's amended complaint. Those portions of Count VII which relate to defendant's activities in 1980–81 are not time barred and will be retained.

Plaintiff also seeks an award of punitive damages in Count VII. Under Iowa law, recovery of punitive damages can only be incidental to the main cause of action. *Sebastian v. Wood*, 246 Iowa at 100, 66 N.W.2d at 844. Therefore, punitive damages are recoverable, if at all, only for defendant's alleged tortious activities which occurred in the years 1980–81.

IN SUMMARY:

1. Defendant's motion to dismiss Count I is denied on the condition that plaintiff within ten (10) days from the date of the filing of this Order amend the Complaint to allege in all counts that amounts of damages that equal or exceed the jurisdictional minimum.

2. Defendant's motion to dismiss Count II is granted insofar as plaintiff seeks to recover damages for emotional distress. The motion is denied as to the claim for economic loss.

3. Defendant's motion to dismiss claims for punitive damages set forth in Counts III and V is denied.

4. Defendant's motion to dismiss Count IV is denied.

5. Defendant's motion to dismiss Count VI is granted.

6. Defendant's motion to dismiss Count VII is denied as to the 1980–81 claims and granted as to the 1976 claim. The motion to dismiss the prayer for punitive damages asserted in this count, insofar as it pertains to the 1980–81 claims, is denied.

IT IS SO ORDERED.