**Lois McCRACKEN,
Plaintiff–Appellee/Cross–Appellant,**

v.

**EDWARD D. JONES & CO. and Dennis Hohn,
Defendants–Appellants/Cross–Appellees.**

No. 88–185.

Court of Appeals of Iowa.

May 23, 1989.

Kenneth L. Keith and Lloyd E. Keith of Keith & Orsborn, Ottumwa, and Leo J. Asaro of Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for defendants-appellants/cross-appellees.

Fred J. Kreykes of Kreykes Law Office, Pella, for plaintiff-appellee/cross-appellant.

Heard by OXBERGER, C.J., and DONIELSON and SACKETT, JJ.

DONIELSON, Judge.

Defendants appeal from a judgment for plaintiff entered on a jury verdict on plain-

tiff's claims of violation of fiduciary relationship, negligent misrepresentation, and violation of Iowa's blue sky law, Iowa Code Chapter 502. Plaintiff's claim arose out of defendant brokers' sale of limited partnership securities to plaintiff. The limited partnership subsequently developed financial problems. Defendants claim the trial court erred in: 1) failing to grant a mistrial; 2) allowing the admission of certain objectionable evidence; 3) its instructions to the jury; and 4) entering a judgment which directed recovery under Iowa blue sky laws. Defendants also assert plaintiff's claims were time barred. Plaintiff filed a cross-appeal claiming the trial court erred in: 1) ruling as inadmissible evidence regarding the sale of a security which was the subject of a claim disposed of by summary judgment in favor of the defendants; and 2) failing to instruct the jury regarding emotional and punitive damages and fraudulent misrepresentation. We affirm on appeal and dismiss the cross-appeal.

## Facts

Plaintiff Lois McCracken invested money through the brokerage firm of Edward D. Jones & Co. She worked with Dennis Hohn, a registered representative of Jones. Plaintiff had been investing with Jones through Hohn for approximately ten months prior to the transactions at issue here. Hohn advised plaintiff to invest in, among other investments, a limited partnership interest in Petro–Lewis Corporation and D.H. Baldwin debentures. Plaintiff invested $7,000 in Petro–Lewis on December 7, 1982, and $8,000 on January 5, 1983. Petro–Lewis was involved in the oil and gas industry. The limited partnership used investors' funds to buy oil and gas properties and paid interest to investors from the income. The Petro–Lewis investment paid returns of 14% and 15% the first two years, but in 1985 the company developed serious financial problems. Plaintiff received interest from her $15,000 investment in the amount of $2,100 the first year (1983) and $2,300 the second year (1984). In subsequent years, she received $820, $296, and $554 at the time of trial. In 1985 plaintiff's interest in Petro–Lewis securi-

ties was exchanged for an American Royalty Trust Certificate.

Plaintiff invested $12,000 in a D.H. Baldwin debenture on February 22, 1983. In September of 1983, D.H. Baldwin Co. entered reorganization proceedings under Chapter 11 of the U.S. Bankruptcy Code. A class action was filed in December of 1983 on behalf of all purchasers of the Baldwin debentures in the United States District Court, Southern District of Ohio, asserting claims against Jones and other defendants. *Bedel v. Thompson*, No. C–1–83–1990 (S.D.Ohio December 1983). The class was certified and joined with another class, and a settlement was approved September 16, 1986. *Stoller v. Baldwin–United Corp.*, 650 F.Supp. 341, 342 (S.D.Ohio 1986). Notice of the proposed settlement was sent to class members, including plaintiff. On December 23, 1986, the court entered a final order dismissing with prejudice the action and all claims which were or could have been asserted in the action by the class (except the opt-outs) against Jones and the other defendants.

Plaintiff's name was not among the opt-outs. *Bedel v. Thompson*, No. C–1–83–1990 (S.D.Ohio December 1983). The trial court determined in an order for partial summary judgment that plaintiff's claims "arising out of the sale of the debentures were or could have been asserted in the *Bedel* action." *McCracken v. Edward D. Jones & Co.*, No. CL 2496–1185 (Iowa D.C. Wapello County June 30, 1987). On September 23, 1987, plaintiff made a motion to amend her petition to clarify that count one regarding the Baldwin debentures was a claim based not on the sale of the security, but instead based on Hohn's refusal to liquidate the security while it still had value. The court denied the motion September 29, 1987, and sustained defendants' motion in limine precluding plaintiff from referring to the Baldwin debentures at trial.

The matter came to trial and was submitted to the jury on plaintiff's claim of violation of fiduciary relationship, negligent misrepresentation, and violation of the Iowa Securities Act, Iowa Code Chapter 502, known as the blue sky law. The jury

returned special verdicts against the defendants on each issue and assessed plaintiff's damages at $8,930. The jury assessed fault between the parties at 65% to the defendants and 35% to the plaintiff.

The court entered judgment against defendants in the amount of $16,166.99 and awarded the plaintiff attorney's fees pursuant to the Iowa Securities Act.

## I.

Defendants claim the trial court was in error in failing to grant a mistrial on two matters: 1) reference by the plaintiff and her counsel to the Baldwin Securities; and 2) misconduct of plaintiff's counsel in making a disparaging reference to the value of the Petro–Lewis Security. We allow trial courts broad discretion in determining whether to grant a mistrial. *Yeager v. Durflinger*, 280 N.W.2d 1, 7 (Iowa 1979). Such discretion is a recognition of the trial court's better position to appraise the situation in the context of the full trial. *Id.* We find no abuse of discretion in failing to grant defendants' motion for mistrial.

Plaintiff's counsel, on direct examination of plaintiff, asked how much money she had available for investment. Plaintiff indicated she was down to $42,000 from the $72,000 she initially had available to invest. When asked what caused the reduction, she replied, "I have lost $15,000.00 in principal to Petro–Lewis," and "all the interest of the money plus I have had to take money from my savings account that I didn't expect to have to spend just in order to live." Defendants assert this answer improperly included reference to her Baldwin Securities because although she testified she only lost $15,000 in principal from Petro–Lewis, the court allowed the jury to infer the lawsuit involved substantially more loss. Defendants, however, made no motion for mistrial at this point and instead proceeded to cross-examine the plaintiff on this point.

On cross-examination, defendants' counsel asked plaintiff how she arrived at her loss:

MR. KEITH: Well, how did you arrive at the figure of $42,000.00 that you gave to the jury? Where did you come up with that figure?

\* \* \* \* \* \*

MR. KREYKES: Can I simply alert the Court to the fact that he is asking a question that might lead to something he doesn't want to hear.

THE COURT: I think you may continue, Mr. Keith.

\* \* \* \* \* \*

MRS. McCRACKEN: I had C.P. National $5,000.00, Southeastern Michigan Gas, $10,000.00, Petro–Lewis, $15,000.00, and the one I can't mention I had $12,000.00. I had $5,000.00 in Union Electric and 10,000 in Commonwealth Edison and 12,-000 in Putnam. I don't know what that totals up to but I have lost $27,000.00 of this so I deducted 27,000 from 69,000 and that's what I come up with is $42,000.00. It may be my math is not correct.

Defendants moved for a mistrial based on plaintiff's interjection of "and the one I can't mention" and "I have lost $27,000.00" claiming they clearly were references to the Baldwin Securities.

In cross-examining plaintiff, defendants' counsel elicited very specific information regarding her losses instead of confining himself to the issue of her loss from the Petro–Lewis security. Now defendants complain they were prejudiced by plaintiff's answer.

We reject defendants' contention that the trial court erred in not granting a mistrial based on these statements. Plaintiff's statements on direct were not clearly prejudicial. In fact, defendants apparently did not think so at the time as they did not move for a mistrial. Plaintiff's answer on direct did not refer to any other securities, only her loss on Petro–Lewis and the consequential tapping of her principal for living expenses.

Further, any reference to other securities was elicited by the defendants on cross-examination. Under the Doctrine of Invited Error, it is elementary a litigant cannot complain of error which he has invited or to which he has assented. *Hackman v. Beckwith*, 245 Iowa 791, 800, 64

N.W.2d 275, 281 (1954); *see* 5 Am.Jur.2d *Appeal and Error* § 713 (1962). Although plaintiff's reference to other securities may not be technically responsive to the questions asked, it is an answer that may be expected of an unskilled witness to questions of the kind asked by defendants' counsel. *See Stewart v. Hilton*, 247 Iowa 988, 998, 77 N.W.2d 637, 643 (Iowa 1956).

■ Defendants also complain of a statement made by plaintiff's counsel in the course of his direct examination of plaintiff that "the point is it doesn't have any value," and a statement made in the course of cross-examining Hohn that "obviously many changes did take place over the life of this program and it ended up in pretty sad shape." The trial court has considerable discretion in determining whether the alleged misconduct of counsel, if there was such, was prejudicial. *Hamilton v. O'Donnell*, 367 N.W.2d 293, 296 (Iowa App.1985). We will not interfere with its determination of such an issue unless it is reasonably clear the discretion has been abused. *Id.* We find the trial court did not abuse its discretion in failing to grant a mistrial based on attorney misconduct.

## II.

Defendants assert the trial court erred in allowing the admission of 1) testimony by witnesses on unrelated transactions with the defendants and 2) testimony on plaintiff's claimed physical and emotional damages. We find no error in the trial court's actions regarding the admission of this evidence.

■ Plaintiff claimed Hohn made misrepresentations and omitted to state certain material facts in connection with the sale of the Petro–Lewis security. Defendants' witnesses testified company policy prohibited brokers from guaranteeing the safety of an investment or the rate of return. Further, Hohn testified he always explained the risks of a particular investment, that he would not have told a customer they could get their money back at any time, and that it was customary to give investors a prospectus, which explained the Petro–Lewis security was tied to oil and gas prices, upon purchase of the Petro–Lewis security. The defendants claim the trial court erred in allowing plaintiff's rebuttal witnesses to testify about their dealings with Hohn in the purchase of Petro–Lewis securities.

■ The admission of testimony regarding similar acts is a question of trial court discretion, and we reverse only if that discretion is abused. *Kunkle Water & Electric, Inc. v. City of Prescott*, 347 N.W.2d 648, 653 (Iowa 1984). In *Kunkle*, the City of Prescott alleged Kunkle made fraudulent misrepresentations in estimating the cost of repairing the city's water system. The court allowed evidence that Kunkle, in thirty-two other instances, had estimated below the statutory $10,000 competitive bidding trigger and had divided his bill to disguise that fact. *Id.* The Iowa Supreme Court held this was not an abuse of discretion because "any fact tending to bear upon a fact in issue is susceptible of proof, and thus collateral facts may be proved where they can be shown to fall within that category." *Id.* The facts in issue here regard whether or not Hohn made misrepresentations or failed to state certain material facts. The trial court did not abuse its discretion in admitting testimony of similar acts by Hohn in selling the Petro–Lewis security.

■ The trial court allowed plaintiff's son to testify about plaintiff's physical and emotional suffering as a result of her dealings with Hohn and the Petro–Lewis security. Defendants had filed a motion in limine asking the court to prohibit such testimony as it would be totally inappropriate and unsupported by the evidence and would be unjustified as a measure of damages. A motion in limine is not ordinarily employed to choke off an entire claim or defense. *Lewis v. Buena Vista Mutual Insurance Ass'n*, 183 N.W.2d 198, 201 (Iowa 1971). This is exactly what the defendants attempted to do. Testimony regarding plaintiff's physical and emotional suffering was properly allowed.

## III.

Defendants claim the court erred in its instructions to the jury in the following

respects: 1) failing to instruct the jury to disregard plaintiff's evidence and claim regarding her physical and emotional damages; 2) submitting the issue of a violation of the blue sky law statute to the jury; 3) submitting the issue of breach of a fiduciary duty to the jury; 4) submitting the issue of negligent misrepresentation to the jury; and 5) in improperly instructing the jury as to plaintiff's claims. We find no error in any of the above instructions.

■ **A.** The court directed a verdict for defendants on plaintiff's claim of emotional damages. Defendants objected to the court's instructions in that the court failed to instruct the jury specifically to disregard that evidence in determining liability or damages. Defendants cite no authority for the proposition that such an instruction must be given when the trial court directs a verdict on a certain claim. We find the instructions specifically advised the jury that they are not to be influenced by any sympathy, bias, prejudice, or emotions and limit the damages so that there is no room to consider such evidence in arriving at a measure of damages. Accordingly, we find no error in this regard.

■ **B.** Defendants assert the trial court erred in submitting the plaintiff's claim for recovery under blue sky law as no adequate notice was given to the defendants that plaintiff intended to rely on this theory. Under Iowa Rule of Civil Procedure 69(a), notice pleading requires a petition to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The plaintiff does not need to identify a specific legal theory, but must simply state the prima facie elements of a claim so as to give fair notice to the defendant. *Stessman v. American Black Hawk Broadcasting Co.,* 416 N.W.2d 685, 686 (Iowa 1987). Iowa Code section 502.-401, the relevant section of the Iowa Securities Act (blue sky law), provides in pertinent part:

It is unlawful for any person, in connection with the offer to sell, offer to purchase, sale or purchase of any security in this State, directly or indirectly:

\*  \*  \*  \*  \*  \*

2. To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

Plaintiff's petition, in Count II, alleged defendants repeatedly assured her that there would be no risk to her money and failed to advise and warn her concerning the risk involved in each of her investments. The prima facie elements for recovery under section 502.401(2) are either to make an untrue statement or to omit to state a material fact. We find plaintiff stated the elements of a claim under the blue sky laws, giving fair notice to the defendants.

■ Defendants further claim it was error to instruct the jury under the blue sky law because there was no factual basis in the record to submit the claim. Plaintiff testified she notified defendants she wanted to invest only in A-rated bonds and defendants did not inform her Petro–Lewis was not an A-rated bond. She also testified Hohn did not inform her the rate of return was tied to oil and gas prices, the risk involved, and that defendant had a broker-dealer agreement with Petro–Lewis. Plaintiff also claimed defendant told her Petro–Lewis would yield 14% over the life of the security. Hohn's testimony contradicted each of plaintiff's assertions. It is for the jury to determine whose version of the facts to believe. We find ample evidence to at least submit the claim to the jury.

■ **C.** Defendants claim no fiduciary relationship existed between plaintiff and Hohn and even if such a relationship did exist, there is no evidence in the record to submit the issue of breach of fiduciary relationship to the jury. The jury returned special verdicts finding a fiduciary relationship existed between defendants and the plaintiff. A special verdict, if supported by substantial evidence, binds the appellate court. *Sand Seed Service, Inc. v. Bainbridge,* 246 N.W.2d 911, 912 (Iowa 1976). We find substantial evidence in the record

to support a finding that a fiduciary relationship existed.

We apply the definition of a fiduciary relationship set out in the Restatement (Second) of Torts § 874 comment a (1979):

A fiduciary relation exists between two persons when one of them is under a duty to act for or give advice for the benefit of another upon matters within the scope of the relation.

*Kurth v. Van Horn,* 380 N.W.2d 693, 695 (Iowa 1986).

Such relationship exists when there is a reposing of faith, confidence and trust, and the placing of reliance by one upon the judgment and advice of another.... Some of the indicia of a fiduciary relationship include the acting of one person for another; the having and the exercising of influence over one person by another; the reposing of confidence by one person in another; the dominance of one person by another; the inequality of the parties; and the dependence of one person upon another. Because the circumstances giving rise to a fiduciary duty are so diverse, any such relationship must be evaluated on the facts and circumstances of each individual case.

*Id.* at 695–96 (citations omitted).

Neither party cites, and this court is unable to find, any Iowa case that imposes a fiduciary relationship between a stockbroker and his customer/client. However, the facts in this case clearly establish the existence of such a relationship. Plaintiff, fifty-nine at the time of trial, was divorced at the time of the transactions in question. She had received $95,000 from her divorce and an inheritance. Her divorce lawyer referred her to an accountant for tax advice. The accountant, anticipating that plaintiff would have future tax liability, recommended a passbook savings account because the funds would be readily available, but would also be accruing interest. Thereafter, plaintiff contacted Hohn and put her money in a passbook savings plan through Jones. Following several passbook savings transactions with Hohn, Hohn began to inquire about her finances and the type of investments she should make.

Plaintiff expressed her desire to invest only in A-rated bonds, an investment Hohn described to her as safe and secure. In December 1982, Hohn advised plaintiff to invest in Petro–Lewis securities. Plaintiff testified Hohn did not tell her the Petro–Lewis security was not an A-rated bond or that she couldn't get her money out any time. Defendants, in their brief, acknowledged this, but argue plaintiff did not specifically ask whether Petro–Lewis was an A-rated bond. Plaintiff also complained she was not informed by Hohn that Jones had a broker-dealer arrangement with Petro–Lewis and defendant Edward D. Jones & Co. made approximately $12,750,000 in commissions selling Petro–Lewis limited partnerships. Plaintiff testified she was not given a prospectus before buying the security and did not read the application because she trusted and relied on Hohn's advice. It was not until September 1984 that plaintiff discovered she could not liquidate her investment. Plaintiff also testified Hohn assured her the Petro–Lewis investment would yield about 14% each year.

Plaintiff had no investment experience prior to her dealings with Hohn. The relationship of stockbroker-purchaser existed here. Hohn advised plaintiff about matters within the scope of this relationship. Hohn knew plaintiff trusted him and relied upon his judgment and advice. Hohn would have been aware that plaintiff did not read the Petro–Lewis application before signing and that she thought she was investing in A-rated bonds. There is substantial evidence in the record to submit to the jury the question whether a fiduciary relationship did exist between Hohn and plaintiff. The defendants put on evidence to refute plaintiff's version of the facts, and the jury returned a special verdict finding such a relationship existed and there was a breach of duty. We find that verdict was based on substantial evidence.

■ **D.** Defendants claim the trial court erred in submitting the issue of negligent misrepresentation to the jury. The Iowa Supreme Court has adopted section 552 of the Restatement (Second) of Torts as a guideline for defining those persons

who may recover against one who negligently supplies information for the guidance of others. *Larsen v. United Federal Savings & Loan Ass'n of Des Moines,* 300 N.W.2d 281, 287 (Iowa 1981). This section states in pertinent part:

One who, in the course of his business, profession, or other employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transaction, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Id.* at 287.

Defendants assert there is no substantial evidence in the record to support a claim of negligent misrepresentation. Defendants argue, as they have throughout their brief, that plaintiff's version of the facts is unbelievable and that defendants put on considerable evidence to refute plaintiff's evidence. Defendants argue that it is unbelievable plaintiff could claim she did not know the nature of Petro–Lewis or that, even if Hohn failed to describe the investment, she would not have known her investment would be worth more when oil and gas prices were high. Therefore, defendants argue, there is no substantial evidence in the record.

Defendants' argument is without merit. It is for the jury to determine the believability of testimony and determine the facts based on conflicting evidence. We find substantial evidence in the record Hohn did supply false information to plaintiff upon which she could have reasonably relied.

■ **E.** Defendants' final contention regarding error in the jury instructions is that the instructions were improperly worded. Instruction No. 15 stated in part:

The Plaintiff ... claims Defendant breached a fiduciary duty it had as to the Plaintiff in one or more of the following particulars: ... 4) in encouraging Plaintiff to invest in the security when Plaintiff's goal was to invest in safe and secure investments.

Instruction No. 24, on plaintiff's blue sky claim, contained the same statement. Instruction No. 16 stated in part:

To entitle the Plaintiff to recover on her negligent misrepresentation claim, the Plaintiff must prove the following propositions: 1. The Defendants during the fall of 1982 and January of 1983 negligently supplied the following information to Plaintiff, which was false.... B. In telling Plaintiff that the security was a safe investment for her funds, and that she could get her money back any time.

■ Defendants also complain Instruction No. 23 fails to set out the material facts they complain are in error in the other instructions. Defendants argue these instructions assume that the investment wasn't safe and secure, a fact in dispute, and were confusing. Jury instructions are to be considered as a whole and as long as the jury has not been misled there is no reversible error. *Moser v. Stallings,* 387 N.W.2d 599, 605 (Iowa 1986). The trial court is free to phrase instructions in its own words so long as the instructions fully and fairly inform the jury of the issues and applicable law. *Clinton Land Co. v. M/S Associates, Inc.,* 340 N.W.2d 232, 234 (Iowa 1983). We find, when considered as a whole, there was no error in the jury instructions.

## IV.

■ Defendants claim the trial court erred in entering judgment under Iowa Code Chapter 502 and allowing attorney fees thereunder. The jury returned special verdicts finding in favor of plaintiff on all three theories of recovery, assessing fault to plaintiff of 35% and to defendants of 65%. The jury found plaintiff had been damaged in the amount of $8,930. The trial court entered judgment against defendants in the amount of $16,166.99 and awarded plaintiff attorney fees under Chapter 502 in the amount of $5,600. Defendants assert the trial judge erred in entering a judgment under Chapter 502 and in failing to reduce plaintiff's damages by 35%.

The trial court entered judgment, based on special verdicts, on the alternate theory of violation of the Iowa Securities Law. This statute does not allow for the reduction of damages based on comparative fault and accordingly the trial court did not err in failing to reduce damages. Chapter 502 allows for an award of attorney fees, and we affirm the award.

## V.

Defendants assert plaintiff's claims were barred by the statute of limitations. We find no merit in defendants' contention. Plaintiff purchased Petro–Lewis securities on December 7, 1982, and January 5, 1983. Plaintiff filed her suit November 21, 1985, over two years after the last purchase of this security. Defendants assert the statute of limitations under section 502.504 is two years following the last purchase. Under section 502.504, the statute of limitations for actions under section 502.401 is the shorter of the following two periods:

a. Five years after the act or transaction constituting the violation; or

b. Two years after the plaintiff receives actual notice of, or upon the exercise of reasonable diligence should have known of, the facts constituting the violation.

Iowa Code § 502.504(2) (1987). Defendants cite no facts or authority for the proposition that the applicable period is not five years. Defendants, in their brief, argue plaintiff does not cite any authority for the application of the longer period. However, the party relying on the statute of limitations defense has the burden to establish that defense. *Neylan v. Moser*, 400 N.W.2d 538, 541 (Iowa 1987). Defendants have not met their burden.

The limitation period for breach of fiduciary relationship is five years. *Kendall/Hunt Publishing Co. v. Rowe*, 424 N.W.2d 235, 243 (Iowa 1988); Iowa Code § 614.1(4) (1989). The two-year limitations period under section 614.1(2) applies to defamation, torts causing bodily injury or death, and harm related to these wrongs. *Clark v. Figge*, 181 N.W.2d 211,

215 (Iowa 1970). Plaintiff's claim for negligent misrepresentation is not encompassed in the two-year limitations period. Instead, plaintiff's claim concerns injury to economic and financial interests and is properly brought within the five-year limitations period under section 614.1(4). *See Rodgers v. Pennsylvania Life Insurance Co.*, 539 F.Supp. 879, 885 (S.D.Iowa 1982).

## VI.

Iowa Rule of Appellate Procedure 5(a) requires cross-appeals be brought within thirty days for taking an appeal or, in any event, within five days after the appeal is taken. The requirements of this rule are mandatory and jurisdictional, and failure to comply requires dismissal of the appeal. *Hayes v. Kerns*, 387 N.W.2d 302, 305 (Iowa 1986). It is our duty to refuse, on our own motion, to entertain an appeal which is untimely. *Doland v. Boone County*, 376 N.W.2d 870, 876 (Iowa 1985). Accordingly, plaintiff's cross-appeal is dismissed. Each party shall pay their own costs.

APPEAL AFFIRMED; CROSS–APPEAL DISMISSED.

OXBERGER, C.J., concurs.

SACKETT, J., concurs in part and dissents in part.

SACKETT, Judge (concurring in part and dissenting in part).

I am unable to agree with the majority there is substantial evidence to support the submission of the existence of a fiduciary relationship between plaintiff and defendant Hohn. I would reverse on this issue and remand for a new trial.