# IN THE COURT OF APPEALS OF IOWA

No. 24-0244
Filed July 24, 2024

**IN THE MATTER OF C.J., ALLEGED TO BE SERIOUSLY MENTALLY IMPAIRED,**

**C.J.,**
　　Respondent-Appellant.

---

**IN THE MATTER OF C.J., ALLEGED TO BE A PERSON WITH A SUBSTANCE USE DISORDER,**

**C.J.,**
　　Respondent-Appellant.
_____

　　Appeal from the Iowa District Court for Woodbury County, Jeffrey A. Neary,

Judge.

　　A patient appeals from two civil commitment orders. **AFFIRMED ON BOTH**

**APPEALS.**

　　Debra S. De Jong, Orange City, for appellant.

　　Brenna Bird, Attorney General, and Sarah Anne Jennings, Assistant

Attorney General, for appellee State.

　　Considered by Ahlers, P.J., and Chicchelly and Buller, JJ.

**BULLER, Judge.**

In January 2024, applications were filed seeking civil commitment of C.J. based on her alleged serious mental impairment and substance-use disorder. The substance-use-disorder application averred that C.J. could "not function normally in society, can't work, [was] violent for no reason, has lost almost any desire to succeed [and] enjoy life." The supporting affidavit further alleged C.J. would "break things," steal, hit people, and was dangerous to be around. The mental-health application contained similar information but also asserted C.J. had "methamphetamine-induced psychosis," leading her to hear voices, have delusions, and stop taking care of herself.

A physician's report opined that C.J. had a substance-use disorder as defined by the American Psychiatric Association, to wit: methamphetamine use disorder. The physician observed that a urinalysis test was positive for amphetamines and that C.J. was "aggressive, threatening to staff, requiring [as needed] medications and physical restraints due to aggression." The physician opined that C.J. was a danger to herself and others and "need[ed] to remain hospitalized for further stabilization and forced oral, injectable, and long-acting injectable medications." And the report noted C.J.'s two prior hospitalizations in 2022 and 2023.

A separate physician's report opined that C.J. had schizoaffective disorder, bipolar type. That report noted C.J. had "no insight into [her] mental illness and need for treatment," and that she "attempted to physically assault staff, verbally threaten[ed] staff, required physical restraints, [was] refusing medications, [and] refused to cooperate with psychiatric evaluation." The physician opined that C.J.

would "need to remain in the hospital for further stabilization and forced oral, injectable, and long-acting injectable medications."  The report concluded C.J. posed a danger to herself or others and documented her prior hospitalizations, noting one was for medication noncompliance.

After a continuance due to scheduling conflicts with court-appointed counsel, a commitment hearing was held before a district judge.  The orders in both the substance-use-disorder and mental-health cases noted "[a]ll parties waive court and mechanical reporting" and "[p]arties waive hearing and tape recording." The court also received the physician's report without objection in both cases and the parties waived the physician's personal presence.

The parties resolved the mental-health commitment by a stipulation in which they agreed C.J. met the statutory criteria for commitment.  But the substance-use-disorder commitment was contested.  The court found C.J. met the criteria for commitment as a person with a substance-use disorder under Iowa Code chapter 125 (2024), based on the physician's report, the application, the affidavit, and C.J.'s testimony.

C.J. appeals both orders, challenging sufficiency of the evidence and alleging ineffective assistance of counsel.  If we could reach the issue, our review of the evidence supporting commitment would be for correction of errors at law.  *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013).  And our review of the ineffective-assistance claim is de novo.  *In re B.T.G.*, 784 N.W.2d 792, 798 (Iowa Ct. App. 2010).

**Sufficiency of the evidence.**  We find resolution of the sufficiency challenges dictated by application of a controlling decision from our supreme court:

*In re F.W.S.*, 698 N.W.2d 134 (Iowa 2005). That case, like this one, concerned appeal of an unreported civil-commitment hearing. *Id.* at 135. The supreme court noted both our rules of appellate procedure and case law require that an appellant challenging sufficiency of the evidence include a transcript or other record affirmatively disclosing the error relied on for reversal. *Id.*; Iowa Rs. App. P. 6.803, .806(1). And the supreme court reiterated we "may not speculate as to what took place or predicate error on such speculation." *F.W.S.*, 698 N.W.2d at 135. Much like the appellant in *F.W.S.*, C.J. could have filed a statement of proceedings for settlement by the district court under what is now Iowa Rule of Appellate Procedure 6.806 but failed to do so. *See id.* The need for such a record is perhaps heightened here compared to *F.W.S.*, as the district court expressly cited C.J.'s testimony at the hearing for the partial basis of its decision in both orders. As compelled by *F.W.S.*, we affirm in the absence of a record that would permit appellate review. *See id.*; *see also Weakley v. Yetmar*, No. 20-0274, 2021 WL 210751, at *1 (Iowa Ct. App. Jan. 21, 2021) (noting that, while some facts can be derived from documentary evidence, the lack of a transcript deprives us of a "full picture" of the evidence and leaves us with "no choice but to affirm").

We also recognize that, independent of the waiver finding based on *F.W.S.*, the sufficiency of the evidence as to the mental-health commitment was waived by C.J.'s stipulation below. *See, e.g.*, *Jasper v. State*, 477 N.W.2d 852, 856 (Iowa 1991) (noting one "cannot deliberately act so as to invite error and then object because the court has accepted the invitation"); *McCracken v. Edward D. Jones & Co.*, 445 N.W.2d 375, 378 (Iowa Ct. App. 1989) ("[I]t is elementary a litigant cannot complain of error which he has invited . . . .").

**Ineffective assistance.** C.J. also contends her appointed attorney was ineffective. We question whether we have sufficient record to review this claim in the absence of a transcript from the hearing, in part for the reasons identified in *F.W.S. See* 698 N.W.2d at 135. If we set that concern aside, C.J. would bear the burden to prove her counsel breached an essential duty and that she was prejudiced to the extent she was denied a fair trial. *See B.T.G.*, 784 N.W.2d at 798. As we have in the past for commitments under chapter 229, we assume without deciding that there is a right to effective counsel in civil commitment proceedings under chapter 125. *See* Iowa Code §§ 125.76, .78 (providing for appointment of counsel); *In re J.H.*, No. 12-1133, 2013 WL 1760183, at *3 (Iowa Ct. App. Apr. 24, 2013).

Most of C.J.'s complaints are procedural, focused on the timing of events below or on the court file not containing certain returns of service. But she cites no case law establishing she would be owed any remedy other than a continuance if these issues had been raised below. We also observe that any information contained in filings C.J. did not receive before the hearing was likely communicated to her at the hearing, which undermines any claimed prejudice and highlights the need for an adequate record. For purposes of this appeal, the record is insufficient to answer any question about whether the hearings took place with or without the applicants' testimony, so we cannot engage in review of any claim related to their testimony. In short, our de novo review of these alleged procedural deficiencies does not reveal C.J. was prejudiced to the extent she was denied a fair trial.

The most substantive ineffective-assistance complaint C.J. lodges is that her trial attorney did not require the physician authoring the report to personally

appear for cross-examination. But the limited record we have before us indicates C.J. waived the physician's presence. There could be legitimate tactical considerations supporting that choice, including a reasonable fear that the physician's live testimony would be more damning and detailed than a sparse handwritten report. *Cf. State v. Yaw*, 398 N.W.2d 803, 807 (Iowa 1987) (finding trial counsel not ineffective for permitting child-sex-abuse victims' testimony to be admitted by deposition rather than live testimony). On this record, we conclude C.J. has not overcome the presumption of competence. *Cf. State v. Majors*, 940 N.W.2d 372, 391 (Iowa 2020) (noting in criminal and postconviction cases "our presumption is that counsel performed competently unless the claimant proves otherwise by a preponderance of the evidence" and "[m]ore is required than a showing that counsel's trial strategy backfired or the case would have been tried differently by another attorney").

As for C.J.'s contention her attorney was ineffective for stipulating to treatment under chapter 229, there is no basis in the record for us to make such a finding. A person can reasonably believe stipulating to the necessity of treatment is in their best interest, and the record here supplies adequate reason to believe treatment was both necessary and appropriate for C.J. Absent any record evidence suggesting the stipulation was coerced or otherwise invalid, we affirm. *See In re Z.H.*, No. 15-1943, 2016 WL 4384363, at \*2 (Iowa Ct. App. Aug. 17, 2016) (coming to the same conclusion).

Last, to the extent C.J. advances a claim of cumulative error, and assuming without deciding such a claim exists in civil-commitment cases, we reject it. *See State v. Clay*, 824 N.W.2d 488, 501–02 (Iowa 2012) (explaining the analysis for

cumulative error in a criminal case).  We discern no prejudice, independently or in the aggregate, that would warrant relief.

**AFFIRMED ON BOTH APPEALS.**