**IN THE COURT OF APPEALS OF IOWA**

No. 13-1383
Filed May 14, 2014

IN RE THE MARRIAGE OF JENNIFER M. CAMPBELL
AND JOEL T. CAMPBELL

Upon the Petition of
JENNIFER M. CAMPBELL,
        Petitioner-Appellant,

And Concerning
JOEL T. CAMPBELL,
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Dallas County, Randy V. Hefner,

Judge.


        A wife appeals the economic provisions of the district court's dissolution

decree. **AFFIRMED AS MODIFIED.**



        Leslie Babich and Kodi A. Brotherson of Babich Goldman, P.C., Des

Moines, for appellant.

        Eric Borseth of Borseth Law Office, Altoona, for appellee.



        Considered by Danilson, C.J., and Potterfield and McDonald, JJ.

**DANILSON, C.J.**

Jennifer Campbell appeals the economic provisions of the district court's dissolution decree and the ruling on the motion to enlarge and amend. Jennifer maintains the district court made an inequitable property distribution and asks that we modify it. She also maintains the district court should have set the terms for and ordered the sale of the marital home. We decline to order the sale of the marital home. However, because we find the district court should have given Jennifer credit for her premarital property and for the reduction of the principal of Joel's student loan, we modify the property equalization payment and affirm as modified.

**I. Background Facts and Proceedings.**

We accept the following facts as recited by the district court in amended and substituted findings of fact, conclusions of law, and decree of dissolution of marriage:

> Jennifer Campbell, born in 1985, and Joel Campbell, also born in 1985, were married [in June 2009]. One child, P.C, was born to the marriage in 2012. . . . This was a first marriage for both parties and neither party has any other children. . . . Both parties are in good to excellent physical and mental health. The parties did not execute a prenuptial agreement prior to marriage.
> Both parties have extensive formal education. Jennifer graduated from the University of Northern Iowa in 2006 with a degree in marketing. She obtained a master's degree in marketing from the University of Cincinnati in 2007. Joel also graduated from UNI in 2006 with a degree in business management. He subsequently obtained two masters degrees from Ohio University, one in business and the other in sports administration.
> The parties separated in January 2012. Jennifer has continued to reside in the marital home in Clive which the parties purchased in 2011. Joel currently resides with his mother, his sister and her fiancé, and their children.
> Jennifer has worked for the Integer Group throughout the marriage. She expects to earn $50,000 in 2013. Her benefit

package includes medical, health, and dental insurance, a 401(k) retirement account, short and long-term disability insurance, and life insurance. She now holds the position of senior account executive.

After an internship Joel held a number of part-time jobs. He began to work at Wells Fargo in 2011 as a contract employee through the Palmer Group. He obtained full-time employment with Wells Fargo in December 2012. He anticipates earning $58,510 in 2013. His benefit package includes medical, health, and dental insurance, a 401(k) retirement plan, a Wells Fargo stock purchase plan, and a prepaid legal services plan (which does not provide coverage for this proceeding). He currently holds the position of systems quality assurance analyst. He is not contractually entitled to receive any incentive or bonus pay, nor does he have any expectation of receiving any additional income in the foreseeable future.

. . . .

**Management of finances during pendency of action**. The parties separated on January 6, 2012, and this action was filed on June 8, 2012. From the time of separation until entry of a temporary matters order on August 21, the parties continued to use a joint checking account for payment of expenses. Both parties deposited their earnings checks into that account, although Joel kept his overtime pay for his own use. A temporary matters order was entered in September 2012 pursuant to which Jennifer was awarded temporary primary physical care of P.C., and Joel was ordered to pay $863.26 as temporary child support. At that time Joel stopped depositing his paycheck into the joint account. He is current in payment of that support obligation. Jennifer was granted temporary exclusive possession of the residence and was ordered to pay the PITI [principal, interest, taxes, and insurance] required by the mortgage note. The parties were authorized to divide a joint savings account.

**Premarital assets and debt.** At the time of the marriage Jennifer owned a 2007 Nissan Altima, a gift from her parents, which she values at $17,500 as of the date of the marriage. She also owned an Ameritrade account with a value of approximately $6,353, which also originated as a gift from her parents. She owned a Wells Fargo checking account with a balance of $13,160, and a Wells Fargo savings account with a $1,772 balance. She had no debt at the time of the marriage.

At the time of the marriage Joel owned a 1999 Honda Accord valued at $5,000, an Ameritrade account worth $4,543, and a checking account with a balance of $3,384. He had student loans totaling approximately $67,904.

Jennifer still owns the 2007 Nissan Altima, and Joel still owns the 1999 Honda Accord. These vehicles have depreciated in

value. Each party still owns his or her respective Ameritrade account. Neither party made additional contributions into the Ameritrade accounts during the marriage. . . .

On the other hand, the parties' respective checking and savings accounts were transferred into their names jointly at some point after the marriage. . . .

Regular periodic installment payments were made upon Joel's student loans during the marriage with joint funds resulting in a principal reduction of approximately $10,200, plus payment of approximately $8,000 in interest. . . .

**Marital residence.** The parties purchased a residence in Waukee in January 2011 for $177,580 of which $159,822 was borrowed. Jennifer's parents gifted $9,000 to be applied toward the down payment. The evidence, including Jennifer's father's testimony and the "gift letter" submitted to the lender to secure the purchase money loan, establishes that the cash gift was to Jennifer, but Jennifer's parents made the gift knowing that Jennifer and Joel would use those proceeds to in part fund the down payment for the home. The money was deposited into a joint account, and the down payment was made from this account. Jennifer and Joel at all times planned to hold title to the home jointly. There is no evidence that Jennifer's parents did not understand this intent.

. . . .

The parties only lived in the residence together for approximately one year. Jennifer resided in the home after January 6, 2012, but made the PITI payments out of the joint account into which Joel was depositing his earnings checks. The payoff on the mortgage loan as of December 2012 was $156,450, and the payoff as of the date of trial was approximately $153,822.

. . . .

The residence was appraised in April of 2013 by Roxanne Fornairo. She estimated the value of the property at $187,500, and both parties have reported that value on their respective financial affidavits. Jennifer claims, however, that the actual value of the residence should be reduced because of the condition of the roof. The appraisal report, however, states that the estimated value of the property was in "as is" condition, and further noted deterioration of siding and acknowledged "a roof estimate for 6-$7,000 but the roof does not leak. At least 18 years old, the roof appears to have 7-10 years' life with no shingles missing or curled at this time."

Jennifer disputes that the appraiser's assessment of the physical condition of the residence—including the condition of the roof—is accurate. Nonetheless, a preponderance of the value of the residence in its present condition, including the condition of the roof, is $187,500.

. . . .

**Cash, cash accounts & retirement accounts**. Jennifer is in possession of a safe with $1,307 representing compensation for services which both Jennifer and Joel provided for a company called Competitive Edge at "an event."

The temporary matters order filed on August 21, 2012, authorized the parties to divide equally a joint savings account. This resulted in each party acquiring approximately $10,000. Joel used these proceeds in part to purchase a 2013 Nissan Altima and used the balance for living expenses or attorney fees. Jennifer likewise used her share for similar purposes.

The parties still own a joint Wells Fargo checking account with a current approximate balance of $4,418. Each party also owns separate bank accounts. There is no evidence that either party dissipated marital assets during the marriage, and each used his or her funds, either earned or in Jennifer's case gifted, to pay their own living expenses during the pendency of this action. Joel withdrew $6,000 from the joint account for payment of attorney fees, but it appears Jennifer likewise withdrew $9,000 from a joint account to pay attorney fees. Jennifer claims her withdrawal could be traced to gifts from her parents. Neither of these withdrawals will be calculated into the property division calculation.

The parties own retirement accounts. Petitioner asserts these assets should be disregarded in evaluating the property division. Respondent asserts the present account values should be used in calculating the property division. At trial, neither party requested that these accounts be divided by a QDRO [qualified domestic relations order]. After entry of the decree, and in light of the Court's ruling on other issues, Petitioner requested by post-trial motion that her account be divided in order to reduce the amount of the property equalization judgment Petitioner will owe Respondent. I have granted that portion of the motion. Petitioner's retirement account will be divided equally effective as of the date of the original decree. Respondent's account will not be similarly divided due to its minimal value.

The district court awarded Joel his 2013 Nissan Altima and 1999 Honda Accord, as well as his individual checking and savings account, his Ameritrade account, and his Wells Fargo 401(k) and stock purchase plan.

The district court awarded Jennifer the marital home, her 2007 Nissan Altima, her Ameritrade account, and the joint Wells Fargo checking account. The court ordered the division of Jennifer's 401(k), half for each party, and ordered

Jennifer to make a property equalization payment to Joel in the amount of $21,994. Jennifer appeals.

## II. Standard of Review.

We review equity proceedings de novo. *In re Marriage of Olson,* 705 N.W.2d 312, 313 (Iowa 2005). We give weight to the district court's findings, especially regarding the credibility of witnesses, but are not bound by them. Iowa R. App. P. 6.904(3)(g). "Precedent is of little value as our determination must depend on the facts of the particular case." *In re Marriage of White,* 537 N.W.2d 744, 746 (Iowa 1995).

## III. Discussion.

Jennifer maintains the court's distribution of property was inequitable. She contends the equalization payment owed to Joel should be less, because (1) the district court should not have considered her retirement accounts a marital asset to be distributed, (2) she should have received credit for half of the principal reduction in Joel's student loans, (3) the court failed to take into consideration the difference in the parties' premarital net worth, and (4) the court should have ordered the premarital home to be sold, with Joel being responsible for half of the closing costs. Under our statutory distribution scheme, the first task in dividing property is to determine the property subject to division and the proper valuations to be assigned to the property. *In re Marriage of Fennelly*, 737 N.W.2d 97, 102 (Iowa 2007); *In re Marriage of Vieth,* 591 N.W.2d 639, 640 (Iowa Ct. App. 1999). The second task is division of that property in an equitable manner according to the enumerated factors in Iowa Code section 598.21(5) (2011). *See Fennelly,* 737 N.W.2d at 102. "Although an equal division is not required, it is generally

recognized that equality is often most equitable." *Id.* Ultimately, what constitutes an equitable distribution depends upon the circumstances of each case. *In re Marriage of Hansen,* 733 N.W.2d 683, 702 (Iowa 2007). We consider each of Jennifer's claims in turn.

### A. Retirement Account.

Jennifer maintains the district court should not have divided her retirement account although all of the contributions to the account occurred during the parties' marriage. She does not contend the retirement accounts are not marital assets. Rather, she claims the asset should not be distributed because each party has "more than thirty-seven years to work before reaching retirement age" and because the marriage was of short duration.

Jennifer's retirement account is an asset accumulated during the marriage, which is subject to equitable division. *See* Iowa Code § 598.21(5). Both parties were initially awarded their respective retirement accounts in the decree. However, Jennifer urged in her motion to amend or reconsider that her 401(k) account be divided to reduce her equalization payment, and as requested, the court amended the decree. We decline to modify as Jennifer assented to the division. *See McCracken v. Edward D. Jones & Co.*, 445 N.W.2d 375, 378–79 (Iowa Ct. App. 1989). ("Under the Doctrine of Invited Error, it is elementary a litigant cannot complain of error which he has invited or to which he has assented.").

### B. Student Loans.

Jennifer maintains she should have been given credit for half of the principal reduction of Joel's student loans that occurred during the marriage. The

district court denied this claim, stating that "[r]egular payments upon these loans were no different than debt repayment on other types of debt, such as medical or credit card debt."

Here, Joel incurred the debt before the marriage. It was a nonmarital obligation. Joel was the only party responsible for the debt before marriage, and he remains solely responsible for it after. The district court found that joint funds were used to make periodic payments that resulted in a principal reduction of approximately $10,200. As at least one other court has done, we consider the amount of principal reduction obtained with marital funds an asset to be divided. *See Gangwish v. Gangwish*, 678 N.W.2d 503, 509 (Neb. 2004) ("We agree that [one party's] award should have been reduced by the total student loan debt that she brought into the marriage because the debt was paid off with marital assets."). In order to reach an equitable distribution in a short- term marriage, we give Jennifer credit for half of the amount of principal reduction. Accordingly, we reduce the property equalization payment owed to Joel by $5100.

### C. Premarital Net Worth.

Jennifer also maintains she should have received credit for her premarital property. Specifically, she maintains the district court failed to consider that she had checking and savings accounts worth $14,932 at the time of marriage, while Joel had a checking account worth $3384. Because the monies in each of the accounts were transferred into jointly held accounts, the district court considered them marital and did not give Jennifer credit.

The district court should not separate a premarital asset from the divisible estate and automatically award it to the spouse who owned it prior to the

marriage. *Fennelly*, 737 N.W.2d at 102. Rather, property brought into the marriage by a party is merely a factor among many to be considered under section 598.21(5). *In re Marriage of Schriner,* 695 N.W.2d 493, 496 (Iowa 2005). "This factor may justify full credit, but does not require it." *In re Marriage of Miller,* 552 N.W.2d 460, 465 (Iowa Ct. App. 1996). Other factors under section 598.21(5) include the length of the marriage, contributions of each party to the marriage, the age and health of the parties, each party's earning capacity, and any other factor the court may determine to be relevant to any given case. *See Fennelly,* 737 N.W.2d at 102.

However, "[p]remarital property does not merge with and become marital property simply by virtue of the marriage." *In re Marriage of Wendell*, 581 N.W.2d 197, 199 (Iowa Ct. App. 1998). Although full credit is not required for premarital property, here there is no dispute that Jennifer brought more property into this marriage, which was of a short duration, than Joel. Our court has stated, "If a marriage lasts only a short time, the claim of either party to the property owned by the other prior to the marriage or acquired by gift or inheritance during the brief duration of the marriage is minimal at best." *In re Marriage of Hass,* 538 N.W.2d 889, 892 (Iowa Ct. App. 1995). Although the monies were commingled, we nonetheless conclude Jennifer should be afforded a credit for some of the premarital cash she brought into the marriage. We decline to afford her full credit however, as her premarital cash was put into a joint account and perhaps may have been used to pay-down the principal of Joel's student loans. Because we have already provided credit to her for one-half of the reduction in student loans,

we conclude she should be given an additional credit of $4000 for her premarital cash.

### D. Sale of Marital Home.

Jennifer maintains awarding her the marital home was inequitable. She claims the parties agreed to the sale of the property and that she is unable to make the property equalization payment without selling the home.

The district court could have ordered the sale of the home and then retained jurisdiction to settle any future disputes concerning the terms; however, it was not inequitable for the court to award the marital residence to Jennifer. As the court noted, the parties could not agree on the terms of sale. Although both listed the value of the home as $187,500, Jennifer contested the value at trial and claimed the roof had to be replaced before the sale of the home could occur. The court stated:

> With respect to the residence, Jennifer's position changed between day one and day two of the trial. Initially she requested that she be awarded the residence. Then she requested that the residence be sold. At trial, [the court] expressed concern about ordering a sale unless the parties could stipulate to such matters as listing terms and price. They have not stipulated to such terms.

Although we usually encourage the district court to follow the parties' stipulation regarding the disposition of an asset, here the district court has adequately explained why the stipulated disposition was not truly stipulated and was impracticable. The court further elaborated upon the issue in its ruling on the motions to reconsider stating:

> These parties fiercely dispute the appropriate division of property. As pertinent to the residence, they dispute what work should be done to the residence to prepare it for sale—Petitioner believes the roof should be repaired at substantial expense; Respondent does

not.  So though the parties technically agree to a listing price, they really do not.  Ordering the property sold will likely require ongoing court intervention.

Thus, ultimately the sale of the residence may cause the parties more expense in future litigation.  Furthermore, Jennifer maintained she should be awarded the $9000 gifted to her by her parents, which was used for part of the down payment on the home.  Awarding Jennifer the home allows her to recover the gift.   We conclude awarding Jennifer the marital home was fair and reasonable.

**IV. Conclusion.**

The district court ordered Jennifer to pay Joel a property equalization payment of $21,994.  Because we give her credit for the half of the principal reduction of Joel's student loans ($5100) and for the premarital property she brought into the marriage ($4000), we reduce the property equalization payment to $12,894.  This sum may be paid in part by one-half of Jennifer's 401(k) account, as she urged the court to do.  We affirm as modified.  Costs of appeal are taxed to Joel.

**AFFIRMED AS MODIFIED.**