# IN THE COURT OF APPEALS OF IOWA

No. 22-0392
Filed May 22, 2024

**THOMAS GOETTSCH,**
    Plaintiff-Appellant,

**vs.**

**HEIDMAN LAW FIRM, P.L.L.C., Successor to HEIDMAN LAW FIRM, L.L.P,
JOHN C. GRAY and JACOB B. NATWICK,**
    Defendants-Appellees.

_____

Appeal from the Iowa District Court for Woodbury County, Sarah Crane,

Judge.

A claimant appeals the dismissal of his legal malpractice claim.

**AFFIRMED.**

Peter C. Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellant.

Kevin J. Visser, Paul D. Gamez, and Nicholas Petersen of Simmons Perrine

Moyer Bergman PLC, Cedar Rapids, for appellees.

Heard by Ahlers, P.J., and Chicchelly and Buller, JJ.

**BULLER, Judge.**

Thomas Goettsch[1] appeals adverse rulings following a jury trial in a legal malpractice case against attorneys John Gray and Jacob Natwick and their firm—the Heidman Law Firm (collectively "Heidman," for whom we will use plural pronouns). The case arose from Heidman's representation of Goettsch relating to the buy-out of shares in a family-farm corporation. Goettsch claims the district court should have included a requested alternative in its marshaling instruction and challenges some of the court's rulings on motions in limine. We affirm, finding the requested instruction was not supported by the evidence, the preclusive effect of a valuation ruling was correctly decided, and the remaining motion-in-limine issue was unpreserved.

## I.      Background Facts

Murlen and Florence Goettsch founded Circle G Farms, Inc., an S corporation, and placed their farmland in the corporation. Additional property devised by Murlen to their seven children was transferred to the corporation in 2006, bringing the total corporate landholdings to 798 acres with no liens or mortgages. Murlen and Florence transferred all shares of the corporation—1000 shares each—to the children: Jacquelynn, Paul, Margaret, Kathy, Dale, Goettsch, and Brian. Goettsch and Brian were also the tenants of the Circle G Farms land through their partnership: Goettsch Farms.

In 2005, the seven children entered into a Buy-Sell Agreement restricting the transfer of Circle G shares outside the family. A few years later, Goettsch

---

[1] Due to the large number of family members involved in the underlying matters, we refer to the appellant as Goettsch and all other family members by first names.

purchased Jacquelynn's shares. He also offered to buy the other shareholders' stock, but the other siblings declined.

In 2012, the six siblings who still held shares in Circle G attended an annual meeting at which Goettsch proposed buying out or redeeming the shares belonging to Paul, Margaret, Kathy, and Dale. Goettsch proposed that Paul, Margaret, Kathy, and Dale each receive eighty acres per thousand shares and a $50,000 payment and enter a five-year lease with Goettsch Farms for $20,000 per year (later increased to $40,000 per year); in return they would surrender their shares. The siblings verbally voted in favor of the proposal, and several days later Goettsch, Paul, and Brian signed an agreement for sale of stock and partial distribution of corporate assets. Paul surrendered his stock to the corporation, Circle G transferred an eighty-acre farm to Paul, and Goettsch wrote a check for the lump sum. Margaret, Kathy, and Dale did not sign the agreement and proposed a buyout of their stock over time for tax reasons. Goettsch rejected their proposal.

After this rejection, the three siblings brought an action in federal court against Goettsch, Brian, Paul, Circle G, and Goettsch Farms seeking to dissolve Circle G, alleging oppressive conduct under the Iowa Corporation Act and breach of fiduciary duty claims against Goettsch for renting himself the land at less than half the going rate. Goettsch, Brian, Paul, Circle G, and Goettsch Farms retained Heidman to represent them.

In 2014, the parties participated in a mediation and entered into a stipulation. In that stipulation, Goettsch, Circle G Farms, and/or Goettsch Farms made "an irrevocable election to purchase all of plaintiffs' shares in Circle G

Farms, Inc. for fair value pursuant to that election and to a buyout of all their shares of Circle G Farms, Inc. at fair value as defined in Iowa law." The federal suit would then be dismissed, the plaintiffs would file a complaint in state court requesting equitable relief by way of dissolution or mandatory buyout under Iowa Code section 490.1430 (2013), and the parties would request a transfer to the business court.[2] The stipulation further provided the business court would set the fair value of the shares under Iowa Code section 490.1434(4) and determine whether Goettsch or Circle G had purchased Paul's shares.

The matter was tried that November. In a thorough ruling, the business court walked through the factual background—including a dramatic tax bill the parties would have owed (but could not afford) under Goettsch's proposal. The business court noted the substantial taxable gain that passed through to the remaining shareholders at the transfer of acres to Paul—a tax liability Goettsch neglected to warn Margaret, Kathy, and Dale about before receiving their tax information for their 2012 taxes. The business court found no enforceable contract or agreement was created in 2012, and the circumstances of Paul's share sale and the language of the agreement resulted in the corporation redeeming the shares. The business court also voided (as a breach of the duty of good faith and loyalty) a transaction by Goettsch where he paid a "deposit" to Circle G on the land

---

[2] The business court is a specialty docket in the district court designed to address "business and complex commercial litigation cases." Iowa Sup. Ct. Amended Mem. of Operation, *In the Matter of the Iowa Business Specialty Court* 1 (Jan. 18, 2022) https://www.iowacourts.gov/collections/713/files/1475/embedDocument/. Because both this case and the prior action were heard on the business court docket, for clarity we will refer to the court in the prior action as the business court and the court in this action as the district court or the court.

the corporation had already transferred to Paul—a transaction Goettsch claims transferred Paul's shares to himself.

The business court then turned to valuation of the shares, noting "The parties agree that the appropriate valuation method to use is the corporation's net asset value." The business court further observed any sale price of the corporation as a whole would be based on the farmland's value, and net asset value was the appropriate basis for corporations holding real estate for investment or rental. For the valuation date, the business court used the date before Margaret, Kathy, and Dale filed their federal action, though it acknowledged the land's value was outside the corporation's control. The business court adopted a value for Circle G of just over $1.4 million per 1000 shares. The business court also held the terms of the siblings' Buy-Sell Agreement did not apply based on the language of the agreement, the valuation process in the agreement did not apply in a dissolution action, and it was inappropriate to apply a minority-interest discount. The business court further noted the Buy-Sell Agreement was not applied in the acquisition of Paul's shares by the corporation. Goettsch did not appeal this ruling.

Circle G and Goettsch bought the shares belonging to Margaret, Kathy, and Dale for $4 million. And Goettsch eventually became the sole shareholder of Circle G, but he remained unhappy about the price he had to pay to get there.

## II.      Proceedings

In late 2019, more than four years after the business court's ruling, Goettsch filed his petition in this matter. Goettsch claimed Heidman "fail[ed] . . . to meet the standard of care," resulting in an excess award to his siblings. More specifically, Goettsch alleged that counsel did not advise him at the time of the stipulation that

(1) the valuation "would be highly favorable to Margaret, Kathy and Dale" and (2) he could not insist the purchase be made under terms of value as a going concern as provided in the 2005 Buy-Sell Agreement. On Heidman's motion and following a contested hearing, the case was transferred to the business docket.

Goettsch filed a motion in limine with the district court seeking to prohibit "[a]ny mention, reference, statement or evidence in any form concerning or relating to specific findings in the decision of the Iowa business court, which findings are inadmissible and not relevant to the subject of this lawsuit." He argued the statements were unduly prejudicial and hearsay, asserting the only relevant fact from the ruling was "the amount Thomas Goettsch paid." Meanwhile, Heidman also filed a motion in limine seeking, among other things, for the business court ruling to have preclusive effect on the actual market value of the Circle G shares and to prevent the relitigation of facts in the 2014 joint stipulation. Based on a proposed jury instruction, Heidman also supplemented their motion in limine seeking for the business court's judgment on the 2012 meeting agreement to have preclusive effect.

At a pretrial hearing, the district court reserved ruling on Goettsch's motion in limine to generally exclude the business court ruling from evidence, noting it was a matter for "judgment calls during the trial." The court further held the business court's finding that the siblings' 2012 shareholder meeting did not result in an enforceable contract was necessary and therefore preclusive. Following a post-hearing supplemental motion, the court ruled any factual findings in the stipulation in the prior case were not preclusive but could be used as prior admissions. But

the court also relayed that Goettsch could offer evidence or testimony contrary to the stipulation's facts.

After trial, the jury returned a unanimous verdict finding Heidman was not negligent in their representation of Goettsch. Goettsch filed a post-trial motion requesting a new trial, objecting to the district court's limine ruling granting preclusive effect to the business court's finding the alleged 2012 agreement was not an enforceable contract. His motion also asserted the court should have included certain requested jury instructions and the jury's verdict "fail[ed] to effectuate substantial justice." The court dismissed these (and other) claims, denying Goettsch's motion for new trial. Goettsch appeals, challenging only the trial court's decision to omit a portion of a requested instruction and the court's rulings on the pretrial motions in limine relating to the business court's findings.

### III.    Standard of Review

"[W]e review refusals to give a requested jury instruction for correction of errors at law." *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707 (Iowa 2016). While we review evidentiary rulings for an abuse of discretion, "[g]enerally, the district court's ruling on a motion in limine is not subject to appellate review because the error, if any, occurs when the evidence is offered at trial and is either admitted or refused." *Wailes v. Hy-Vee, Inc.*, 861 N.W.2d 262, 264 (Iowa Ct. App. 2014) (explaining error is not preserved unless challenged when the evidence is offered at trial); *see also* Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 56–57 (2006) ("As a general rule, a court's ruling on a motion in limine does not preserve error."). But "[w]here the district court's ruling on a motion in

limine is unequivocal, 'the decision on the motion has the effect of [an evidentiary] ruling' and thus preserves the issue for appellate review." *Wailes*, 861 N.W.2d at 264 (citation omitted).

## IV. Discussion

"Legal malpractice claims sound in negligence." *Vossoughi v. Polaschek*, 859 N.W.2d 643, 649 (Iowa 2015).

> To establish a prima facie claim for legal malpractice, a plaintiff must produce substantial evidence demonstrating: (1) an attorney-client relationship existed giving rise to a duty; (2) the attorney violated or breached the duty, either by an overt act or a failure to act; (3) the breach of duty proximately caused injury to the client; and (4) the client did sustain an actual injury, loss, or damage.

*Stender v. Blessum*, 897 N.W.2d 491, 502 (Iowa 2017). In instructing the jury, the court here split the second element in two: requiring a finding the attorneys engaged in the specific acts/omissions alleged and then a finding whether the acts/omissions violated the standard of care.

### A. Jury Instruction

Goettsch first asserts the trial court erred in refusing to include a requested specification of negligence in the malpractice marshaling instruction: "[Heidman] engaged in one or more of the following acts or omissions . . . Failing to advise Thomas Goettsch that an alternative claim be made to set aside the transaction to Paul." Heidman objected to the entire negligence specification in Goettsch's proposed instruction (which included five suggested acts/omissions), citing multiple issues—including that it was "misleading and misstates the law as applied to the facts of this case," that this specific section "improperly suggests that the

proof of the alleged . . . omission . . . is sufficient to prove negligence," and the section was barred by issue preclusion from the business court ruling.

At the close of evidence, the court and counsel discussed the relevant instructions. Goettsch proposed three specifications of negligent acts or omissions—two relating to advice about the stipulation provided to the business court, and the third is the contested instruction here: "Failing to advise Thomas Goettsch that an alternative claim be made to set aside the transaction to Paul." Heidman again objected to the last, noting the business court proceedings established the redemption of Paul's shares and the instruction "would mislead the jury" and no damages were connected to the possibility of unwinding the transaction. After hearing arguments, the court decided not to instruct the jury on the third specification:

> THE COURT: All right. So I'm not going to give it as a separate specification. I think it's part and parcel of the counterfactual that you're arguing in . . . as part of the—what your argument is they shouldn't—Mr. Gray and Mr. Natwick shouldn't have advised Mr. Goettsch to sign the stipulation. Your counterfactual is instead of advising them to sign the stipulation, they advised him to fight the oppression and, you know, your argument is part of that could have been trying to set aside the transaction with Paul Goettsch. So I don't find that there's any damages tied to this or that it's a separate specification.
> [GOETTSCH'S COUNSEL]: All right. But, obviously, then, I can argue this is what should have been done and this is how you basically enhance your position in defending the litigation matters.
> THE COURT: I think you can argue it, because I think it goes to your—your theory of what happens in a counterfactual where they don't agree to the stipulation.
> [GOETTSCH'S COUNSEL]: Okay.

During his closing argument, Goettsch's counsel argued that unwinding Paul's transaction would have placed Goettsch in a stronger position against the petition in federal court. He then told the jury,

> Now, that error is not part of what the judge read you in the instructions were the basis of our claim, because that didn't result in any immediate damage. But it should have been done because it would have avoided all the problems that you had with that transaction once he went through the court proceeding. And, number two, it eliminates the potential of a deadlock and grounds for dissolution in the future action, and certainly that was there.

Counsel again argued about setting aside the Paul transaction during rebuttal.

When ruling on this issue in the motion for new trial, the district court observed that the allegation in the requested instruction had not been identified as a separate theory with separate damages. The court noted Goettsch "had not disclosed any damages tied to a claim on that issue" and then referred to the jury instruction conference discussion. The district court also found Goettsch "ha[d] not demonstrated any irregularity or error of law that would require a new trial."

"[A] party is entitled to have its legal theory submitted to the jury if that theory is supported by substantial evidence." *Eisenhauer ex rel. T.D. v. Henry Cnty. Health Ctr.*, 935 N.W.2d 1, 10 (Iowa 2019). For a plaintiff to succeed in a negligence action, the court considers "the context of the relationship between those theories of negligence supported by the evidence and the theory of damages sought by the plaintiff." *Faber v. Herman*, 731 N.W.2d 1, 7 (Iowa 2007). "Actual causation, as well as legal causation, must exist between the breach of the duty of care and the damages sought." *Id.* at 7.

The damages Goettsch sought were: (1) overpayment for shares with damages of $3,562,000; (2) interest on the loan he took out to pay the negotiated buyout of his siblings; (3) lost income from land he sold to pay his loan; and (4) "lost gain" from taxes not attributable to his siblings due to the delayed sale of farmland.

Goettsch did not offer below and does not offer on appeal any argument how the alleged failure of Heidman to advise Goettsch to make a new claim to set aside (or unwind) the transaction with Paul caused the alleged damages. He urges on appeal that unwinding "would have been beneficial" by avoiding potential deadlock among other issues. And his expert witness testified "unwinding a transaction where everybody's in agreement is easy to do," with a clarification that "everybody" meant Paul, Goettsch, and Circle G. But the problem is there's no indication everybody agreed here. Paul testified,

> I had no thought of ever doing that. It's what all seven of us agreed on and I—the paperwork was done. I had the money. I had the deed to my [eighty] acres, and I had no intention, because everyone had agreed that it was the right thing to do, and we did it. And I had no intention of ever trying to change that back.

Goettsch's counsel clarified Paul testified during a deposition he would have "considered it," but then said "no" to undoing the transaction when the Heidman attorneys asked him.

In making his negligence claim, Goettsch relies on a series of condition-precedent hypotheticals: first the court would have unwound the transaction, then Paul would have been willing to vote with him despite Goettsch taking away the eighty acres Paul wanted, and finally Goettsch would have successfully defended the oppression claim in federal court. And, as attorney Natwick observed, "doing so would not solve Goettsch's underlying problem": having his siblings as shareholders in Circle G. Instead, Natwick testified they discussed setting aside the Paul transfer, "but we didn't recommend that they take a position contrary to what they want or what we're advocating for." None of these hypothetical

scenarios is an actual and legal cause of the specific damages claimed by Goettsch.

In our review of the record, we find no substantive evidence supports legal or actual causation needed to link Goettsch's theory of negligence to either the Paul transaction or the damages Goettsch sought. Nor does Goettsch cite any independent legal error beyond whether the instruction was supported by the facts. Thus the district court did not err in not giving the requested instruction.

Last on this point, we recognize Goettsch briefly suggests Heidman should have recognized a conflict of interest and advised their clients (likely Goettsch, Paul, and Circle G) "to seek independent counsel." But Goettsch did not raise or argue this claim below. And because it's not preserved, we end our analysis here. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

**B.      Preclusive Effect of Business Court Ruling**

Goettsch also challenges two aspects of the district court's rulings in limine relating to the business court's ruling. He first urges the district court erred in granting preclusive effect to the business court's ruling on the enforceability of the alleged agreement from the siblings' 2012 shareholder meeting. And from there, Goettsch argues the district court should have excluded evidence of any non-preclusive findings in the ruling as irrelevant.

**1. Existence of Enforceable 2012 Agreement**

Goettsch contends the court erred in granting Heidman's motion in limine, ruling the business court's no-enforceable-contract finding from the siblings' 2012

shareholder meeting was necessary and thus had preclusive effect. Because the pretrial ruling on this issue was unequivocal, error was preserved. *See Wailes*, 861 N.W.2d at 264. Goettsch argues the business court's ruling on the 2012 agreement "was not necessary or essential to the issues of valuation, treatment of Paul's shares[,] and tax consequences." He also asserts this ruling prevented him from arguing Heidman should have sought to enforce the agreement in the prior litigation.

The district court revisited this argument as part of Goettsch's post-trial motion and noted Goettsch "ha[d] not shown the ruling was incorrect." Instead, the court found the ruling met the requirements for issue preclusion, and Goettsch "did not identify any theory of damages tied to" the enforceability of the 2012 agreement.

To us, Goettsch's argument is logically inconsistent, as the enforceability of the 2012 agreement had direct bearing on the valuation issue. If the siblings had entered an enforceable agreement at the 2012 shareholder meeting as Goetsch alleged, then the value of each sibling's 1000 shares would have been set by the agreement: eighty acres of the corporation's land, $50,000, and a five-year lease at $40,000 per year. In fact, the court found Paul's transaction had a value of $1,070,000. The court also adopted the parties' stipulation that all sibling shareholders would have incurred tax liability of more than $100,000 each under the 2012 agreement. As a result, whether the agreement was enforceable was an essential and necessary finding in the business court's ruling determining the value of Circle G shares and tax consequences.

Beyond the logic problems, Goettsch offers no legal argument to show the oral agreement was enforceable and the business court erred in its ruling. Assuming without deciding the issue was adequately briefed, we agree with the district court Goettsch has not established a legal error on this issue.

**2. Admissibility of Prior Judgment.**

Goettsch also claims the court should have granted his own motion in limine to exclude any non-preclusive findings from the business court ruling. He contends he "was clearly prejudiced by the admission of the ruling and the statements made in the business court ruling that were disparaging to [Goettsch]" and that Heidman should not benefit from statements arising out of their representation of him.

But we do not reach the question of prejudice, as this alleged error was not preserved. The district court expressly reserved ruling on the motion, noting the admissibility and use of the ruling would be "a question of timing and judgment calls during the trial." Because this ruling was not unequivocal, it did not preserve error. *See Wailes*, 861 N.W.2d at 264.

Looking past the initial ruling, Goettsch also failed to preserve error at trial because he did not object when the entire ruling was entered evidence as an exhibit. *See Quad City Bank & Tr. V. Jim Kircher & Assocs., P.C.*, 804 N.W.2d 83, 89 (Iowa 2011) ("[E]rror claimed in a court's ruling on a motion in limine is waived unless a timely objection is made when the evidence is offered at trial." (citation omitted)). Even more damning, Goettsch's own counsel offered the unredacted business court ruling into evidence; he cannot now challenge the admission of his own evidence as error. *McCracken v. Edward D. Jones & Co.*, 445 N.W.2d 375, 378 (Iowa Ct. App. 1989) ("[I]t is elementary a litigant cannot

complain of error which he has invited or to which he has assented."); *see also* *State v. Trane*, 984 N.W.2d 429, 435 (Iowa 2023) (finding defendant waived error on evidence he himself elicited or admitted).

## V.    Disposition

On Goettsch's preserved issues, we conclude the district court did not err in denying the requested negligence alternative instruction or in its ruling on the preclusive effect of a necessary and essential portion of the prior action's ruling. And we find Goettsch did not preserve error on his remaining claims.

**AFFIRMED.**